UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

LIGHTNING TECHNOLOGIES, INC.,

                    Debtor.
_____/

PALLTRONICS, INC.,

                    Plaintiff,

vs.

PALIoT SOLUTIONS, INC., etc.,

                    Defendant.
_____/

Case No. 21-41019

Chapter 7

Judge Thomas J. Tucker

Adv. Pro. No. 22-4114

**OPINION REGARDING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION, OR IN THE ALTERNATIVE, FOR ABSTENTION**

**I. Introduction**

This opinion concerns issues of subject matter jurisdiction and permissive abstention.

This adversary proceeding is before the Court on the motion by the Defendant PALIoT Solutions,

Inc. ("PALIoT"), entitled "Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, For

Abstention" (Docket # 11, the "Motion"). The Motion seeks dismissal of all six counts of the

complaint filed by Plaintiff Palltronics, Inc. ("Palltronics"), for lack of subject matter

jurisdiction. Alternatively, the Motion requests that the Court "abstain from hearing this dispute

pursuant to 28 U.S.C. § 1334(c)," if the Court finds that it has subject matter jurisdiction over

any of the counts in the complaint.[1]

_____

[1] Mot. at ¶ 3.

Palltronics filed an objection to the Motion (Docket # 15, the "Objection"), arguing that the Court has subject matter jurisdiction over all of the counts in its complaint. Palltronics argues further that the Court should not abstain from deciding any of the counts in its complaint.

The Court held a hearing, and took the Motion under advisement. For the reasons stated in this Opinion, the Court determines that it has subject matter jurisdiction over all six counts of the complaint. But the Court will abstain from deciding any of the counts, on permissive abstention grounds under 28 U.S.C. § 1334(c)(1), and therefore will dismiss all counts on abstention grounds.

## II. Facts

### A. Background

The following background facts are alleged by Palltronics's complaint. Pre-petition, the Chapter 7 Debtor, Lightning Technologies, Inc., (the "Debtor") operated a business that had "spent tens of millions of dollars" and more than five years researching and developing a revolutionary multi-component, extended-use shipping pallet, which had sections "made of an engineered wood core structure [held together with proprietary adhesive, rather than fasteners and] coated with a proprietary polymer [called Exobond] to give it strength and rigidity."[2] Embedded in the pallets was a proprietary tracking device that uses a snorkel device which allows the tracker to be sprayed after its insertion into the pallet, and that "could monitor the physical location of the [p]allet, the temperature and humidity, and shock or vibration."[3] The Debtor also developed methods of assembling and then spraying the pallets, after embedding the

---

[2] Compl. at ¶¶ 1, 20-21, 24, 27, 36.

[3] *Id.* at ¶ 25.

2

tracking device in the pallets, and recovering the excess of the material sprayed. The assembly process required the Debtor to develop proprietary equipment, including a spray booth, a wood milling machine, and robots, which required coding.[4] The Debtor also developed a business plan which included sources for the necessary materials for the pallets; sets of customers who would use the pallets; and methods "to track the movement of the pallets through the supply chain and earn an accumulation of carbon credits."[5]

### B. The Lightning Technologies, Inc. bankruptcy case

On February 5, 2021, an involuntary bankruptcy petition under Chapter 7 was filed against Lightning Technologies, Inc. by three petitioning creditors, commencing Case No. 21-41019. On February 8, 2021, the Debtor stipulated to the entry of an order for relief under Chapter 7, the Court entered such an order,[6] and a trustee was appointed.

### 1. The sale of substantially all of the Debtor's assets to Palltronics

On May 13, 2021, on a motion by the Chapter 7 Trustee, the Court entered an order (the "Sale Order"), authorizing and approving the sale of substantially all of the Debtor's "Assets" to Palltronics, under 11 U.S.C. §§ 105, 363 and 365.[7] The Sale Order provided that the Debtor's

---

[4] *See id.* at ¶ 24.

[5] *Id.* at ¶¶ 1, 26.

[6] *See* Docket ## 4, 5 in Case No. 21-41019.

[7] *See* "Order Authorizing (I) the Sale of Substantially All of Debtor's Assets Pursuant to 11 U.S.C. §§ 105, 363 and 365, (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, (III) the Sale of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (IV) Granting Related Relief" (Docket # 244 in Case No. 21-41019) at 21-26 ¶¶ 3-10, 31-32 ¶ 17, 34-35 ¶ 21, 39 ¶ 31.

"'Assets' shall be sold free and clear of all Interests" and it defined "Interests" broadly.[8] The

Sale Order provided that the sale of the Debtor's "Assets," is governed by (1) the terms of an

amended asset purchase agreement between the Chapter 7 Trustee and Palltronics "entered into

on March 16, 2021, but effective as of March 4, 2020" (the "Final APA"),[9] which the Court

authorized and approved in the Sale Order, and (2) the terms of Sale Order.[10]

Paragraph 2 of the Final APA broadly defined the "Assets" that were being sold under

that agreement and the Sale Order, and stated, in pertinent part:

> **2. Purchase and Sale of Assets.**
>
> **2.1.** <u>Assets.</u> Upon the terms and subject to the conditions set forth
> in [the Final APA] and the Sale Order, and pursuant to Sections
> 105, 363 and 365 of the Bankruptcy Code, at the Closing and
> effective on the Closing Date, [the Trustee] shall sell, convey,
> transfer, assign and deliver to [Palltronics], and [Palltronics] shall
> purchase, receive and accept from [the Trustee], free and clear of
> all liens, claims, encumbrances and other interests, all of the
> Assets. "Assets" shall mean all of the Debtor's and its bankruptcy
> estate's right, title, and interest in and to the assets, properties, and
> other rights used, useful or capable of being used in connection
> with the Business (exclusive only of the Excluded Assets (as
> defined in Section 2.4 below)). The Assets shall include, but shall
> not be limited to, all of the Debtor's and its bankruptcy estate's
> right, title and interest in and to the Assets described in the
> following clauses of this Section 2.1 (but shall specifically exclude
> the Excluded Assets only):
> . . .
>
> **2.1.4. the Intellectual Property (as defined and identified on
> Schedule 2.1.4 hereto)**;

---

[8] *See* Sale Order at 14-18 ¶¶ R-S.

[9] "Amended 363 Sale Asset Purchase Agreement" (Docket # 259-1 in Case No. 21-41019).

[10] *See* Sale Order at 12 ¶ N, 18-19 ¶¶ U-V, 21-26 ¶¶ 3-10, 31-32 ¶ 17, 34-35 ¶ 21, 39 ¶ 31.

. . .

**2.1.8.** any other property or assets of the Debtor or its bankruptcy estate in existence at the time of the Closing that are not Excluded Assets (as defined in Section 2.4 below);

. . .[11]

Schedule 2.1.4 of the Final APA described the "Intellectual Property" that was being sold to Palltronics, and it included "[a]ll of the Debtor's and bankruptcy estate's entire right, title and interest in, to and under" a list of property, which included, among other property:

(b) **Any and all trade secrets or similar protection for confidential information** (including proprietary business processes, knowledge, ideas, research and development, knowhow, data or any other information or technique relating to the Business, any and all formula, pattern, device, schematics, technology, technical data, designs, drawings, flowcharts, block diagrams, specifications, whether or not patentable, or compilation of information that is used, usable or capable of being used in the Business; including information relating to the formulation of chemical compounds and their application methods or processes, material handling, coating and spray technology and techniques, pooling, and pallet manufacturing and design (including the track and trace and RFID technology embedded therein and related software)), including without limitation the "Exobond" secret formula and the "Exobond" secret process; and **any and all intellectual property rights in computer software and computer software products now or hereafter existing, created, acquired or held.**

(c) Any and all design rights which may be available now or hereafter existing, created, acquired or held.

. . . .

**(f) Any website, domain name, and customer portal.**[12]

The Sale Order provided that at closing, all Assets would vest in Palltronics free and clear

---

[11] Final APA (Docket # 259-1 in Case No. 21-41019) at 2-3 (emphasis added).

[12] *Id.* at pdf pp. 25-27 (emphasis added).

5

of all Interests, and that anyone in possession of any such Assets must turn them over to

Palltronics:

> 6. Upon Closing, the Assets shall vest [Palltronics] with all right, title and interest of the Debtor and its bankruptcy estate to the Assets, free and clear of and from any and all Interests (other than any assumed liabilities under the Final APA in connection with Assumed Contracts and then only to the extent of liabilities that arise, accrue or otherwise are exclusively for periods after Closing). The transfer of the Assets to [Palltronics] pursuant to the Final APA and any and all documents executed in connection therewith does not require any consents other than specifically provided for in the Final APA or as provided for in this Sale Order. . . . .

> 9. Except for the Trustee and his professionals to the extent provided in paragraph 34 of this Sale Order, **all persons or entities which, as of or after the Closing Date, are in possession of some or all of the Assets are hereby ordered and directed to surrender possession of the Assets to [Palltronics] on the Closing Date or at such time thereafter as [Palltronics] may request** and, immediately after delivery of such Assets, to permanently erase or destroy all digital or other electronically stored copies. This directive includes, but is not limited to, the possession of the Assets, including any Intellectual Property and Electronically Stored Property stored or kept electronically or digitally and all copies of Intellectual Property and Electronically Stored Property. Any such person or entity, with notice of this Sale Order, shall be required to certify in writing to the Trustee and [Palltronics] that such party has delivered all Assets and copies to [Palltronics], and has permanently erased or destroyed all digital or other electronically stored copies. In the event that the Back-Up Buyer [(PALIoT)] becomes the Buyer, the immediately preceding sentence is inapplicable.[13]

The Sale Order also contained a retention of jurisdiction provision:

> 36. This Court shall retain exclusive jurisdiction to enforce the provisions of this Sale Order and the Final APA, and to resolve any dispute concerning this Sale Order, the Final APA, or the rights

---

[13]  *See* Sale Order at 23 ¶ 6, 25-26 ¶ 9 (emphasis added).

and duties of the parties thereunder or hereunder or any issues relating to the Final APA and this Sale Order, including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and any Assumed Contracts, adjudicate all issues concerning any actual or alleged Interests in and to the Assets, including the extent, validity, enforceability, priority, and nature of all such actual or alleged Interests and all issues and disputes arising in connection with the relief authorized herein. To the extent there are any inconsistencies between the terms of this Sale Order and the Final APA, the Sale Procedures Order, the Sale Procedures or related documents, the terms of this Sale Order shall control.[14]

PALIoT also bid on the Debtor's Assets and had entered into a back-up asset purchase agreement with the Chapter 7 Trustee (the "Back-Up APA"), which would have become effective in the event that (1) Palltronics failed to close on the Final APA, and (2) PALIoT delivered "the Purchase Price specified in the Back-Up APA at Closing and completion of all other deliveries required of the Back-Up Bidder [(PALIoT)] at Closing under the Back-Up APA."[15]

Ultimately, however, the sale of the Debtor's Assets was consummated with Palltronics, not PALIoT. On May 26, 2021, "[t]he Trustee closed the sale of the Assets . . . with Palltronics at the sales price of $5,000,000.00."[16]

Palltronics alleges that after the closing of the sale, on June 2, 2021, "Palltronics demanded that PALIoT deliver all Assets, including Intellectual Property and Electronically

---

[14]  *Id.* at 42 ¶ 36.

[15]  *See id*. at 22-23 ¶¶ 3-5, 34 ¶ 20.

[16]  *See* "Trustee's Report of Sale"  (Docket # 262-2 in Case No. 21-41019) at 1 ¶ 3.

Stored Data, to Palltronics."[17] Palltronics further alleges that although PALIoT has stated that PALIoT has returned all of the Assets, that statement is false.[18]

## 2. Palltronics's contempt motion

On January 28, 2022, Palltronics filed a motion requesting that the Court find PALIoT in civil contempt, for "its knowing and intentional violation of the Sale Order" (the "Contempt Motion").[19] Palltronics alleged in the Contempt Motion that "PaLIo[T] was founded by a former employee of the Debtor and is managed and controlled by former employees of the Debtor"[20] and that "PaLIo[T] has been using and controlling the Debtor's LinkedIn Page on LinkedIn ('Debtor's LinkedIn Page'), which was sold by the Trustee to Palltronics under the Sale Order and is the exclusive property of Palltronics, for its own benefit and gain."[21] Palltronics alleged that after the closing of the sale of the Debtor's assets to Palltronics, on July 12, 2021, PALIoT through PALIoT's Co-Founder, Chief Technology Officer, and Chief Sustainability Officer, Richard MacDonald ("MacDonald"), used the Debtor's username and password to access the Debtor's LinkedIn Page, and changed the page so that it directed customers to PALIoT's website and MacDonald's phone number. The Contempt Motion argued that "[t]his Court should find that PaLIo[T] violated the Sale Order, hold it in civil contempt, order it to immediately comply

---

[17] Compl. at ¶ 32.

[18] *Id.* at ¶¶ 32-33.

[19] *See* "Palltronics Inc.'s Motion to Enforce Sale Order and Finding of Civil Contempt Against Paliot Solutions LLC" (Docket # 340 in Case No. 21-41019) at 1.

[20] *Id.* at 2 n.3.

[21] *Id.* at 1-2 (footnote omitted).

with the Sale Order, and also award Palltronics monetary and injunctive relief against PaLIo[T]."[22] Palltronics later submitted a proposed order granting its Contempt Motion ("Palltronics's Proposed Order").[23]

PALIoT filed a response, in which it denied the allegations in the Contempt Motion.[24] Palltonics then filed a reply in support of the Contempt Motion, requesting leave to conduct discovery due to factual disputes raised by PALIoT's response.[25]

The Court held a hearing on the Contempt Motion on March 2, 2022. During that hearing PALIoT argued for the first time that this Court lacked subject matter jurisdiction to grant any relief to Palltronics based on the Contempt Motion. After the hearing, the Court entered an order in which the Court granted each of the parties leave to conduct certain limited discovery; required Palltronics and PALIoT to file supplemental briefs; and scheduled a further non-evidentiary hearing on the Contempt Motion.[26] In that Order, the Court also cited two bench opinions it had issued in other cases, in which the Court had held that it had subject matter

---

[22] *Id.* at 2.

[23] *See* "[Proposed] Order Granting Palltronics Inc.'s Motion to Enforce Sale and Finding of Civil Contempt Against PALIoT Solutions LLC" (Ex. 2 to Docket # 374 in Case No. 21-41019) (Palltronics's Proposed Order) at pdf pp. 16-17.

[24] "Response of PALIoT Solutions Inc. to Motion of Palltronics Inc. To Enforce Sale Order and For Finding of Civil Contempt Against PALIoT Solutions LLC" (Docket # 344 in Case No. 21-41019).

[25] "Palltronics Inc.'s Reply in Support of its Motion to Enforce Sale Order and Finding of Civil Contempt Against PALIoT Solutions LLC (Docket # 346 in Case No. 21-41019).

[26] "Order for Further Proceedings, Including a Further, Non-Evidentiary Hearing, on the [Contempt] Motion by Palltronics, Inc. to Enforce Sale Order, And Notice of Two Prior Bench Opinions by the Undersigned Judge Finding Subject Matter Jurisdiction to Enforce Sale Orders" (Docket # 347 in Case No. 21-41019).

9

jurisdiction to enforce a bankruptcy sale order.[27]

On June 23, 2022, Palltronics filed this adversary proceeding. On June 29, 2022, the Court held a further hearing on the Contempt Motion. During that hearing, and in light of its filing of this adversary proceeding against PALIoT, Palltronics revised and narrowed its requested relief on the Contempt Motion, to the following parts of the previously submitted proposed order:

> 3. Palltronics is awarded its attorneys' fees and costs related to or arising from the drafting, filing and prosecution of the [Contempt] Motion . . . , which shall include, but not be limited to, fees and costs related to or arising from the discovery with LinkedIn. Palltronics shall file a statement of such costs and fees within ten days of the entry of this Order. PALIoT shall have seven days to object to the statement of costs and fees. After the expiration of the seven day period, the Court will either enter an order awarding costs and fees to Palltronics or conduct a further hearing.
> . . . .
>
> 6. Within seven days of the entry of this Order, PALIoT shall provide to Palltronics (a) a list of the Followers and the contact information, including, without limitation, the phone number, email address, company name, and individual name for each Follower, (b) a list of all click throughs from the Debtor's LinkedIn Page to the PALIoT Website, and (c) the phone records for the Phone Number from May 1, 2021, through the date that the Phone Number is removed from the Debtor's LinkedIn Page ("Time Period"). The phone records shall include, without limitation, all incoming calls to the Phone Number during the Time Period. Palltronics shall have the right to call each and every person that called the Phone Number during the Time Period to advise such caller that PALIoT falsely held itself out as the Debtor (or Palltronics).
> . . . .
>
> 8. This Order is without prejudice to Palltronics' right to seek additional damages and equitable relief from PALIoT.

---

[27] *Id.*

9.  The terms and conditions of this Order are immediately effective and enforceable upon its entry.

10.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.[28]

During the June 29, 2022 hearing on the Contempt Motion, PALIoT requested that the Court allow it to brief the issue of whether the Court has subject matter jurisdiction over that contested matter.

At the conclusion of the June 29, 2022 hearing, the Court issued a bench opinion, *conditionally* granting the Contempt Motion, and granting all of the relief requested by Palltronics in Palltronics's Proposed Order, as modified by Palltronics at the hearing. The Court's ruling included a finding that PALIoT was in civil contempt for having violated the Sale Order, for the reasons Palltronics alleged in the Contempt Motion and in its briefs. On the same day, the Court entered an order (the "Conditional Contempt Order") *conditionally* granting, in part, the Contempt Motion, consistent with the Court's bench opinion.[29]

The Conditional Contempt Order stated that "[t]he condition for granting the [Contempt] Motion and for granting such relief on the [Contempt] Motion, is that the Court must first find that it has subject matter jurisdiction to grant such relief to Palltronics on the [Contempt] Motion

---

[28]  *"[Proposed] Order Granting Palltronics Inc.'s Motion to Enforce Sale and Finding of Civil Contempt Against PALIoT Solutions LLC"* (Ex. 2 to Docket # 374) (Palltronics's Proposed Order) at pdf pp. 17-18. At a hearing held on June 29, 2022, Palltronics agreed to replace "falsely" in paragraph 6 of the Palltronics's Proposed Order to "incorrectly."

[29]  *See* "Order Conditionally Granting, in Part, the Motion By Palltronics, Inc. to Enforce Sale Order and for a Finding of Civil Contempt Against Palliot Solutions LLC, And Setting a Briefing Schedule Regarding Subject Matter Jurisdiction Issue" (Docket # 408 in Case No. 21-41019).

11

(the 'subject matter jurisdiction issue').["30] The Conditional Contempt Order permitted the parties to file briefs on the subject matter jurisdiction issue, and stated that "[a]fter the briefs are filed, the Court will either schedule a further hearing or will make a ruling on the subject matter jurisdiction issue without a further hearing."[31] The Conditional Contempt Order stated further that "[i]f the Court rules that it has subject matter jurisdiction, the Court will enter a further order that grants the specific relief sought by Palltronics on the [Contempt] Motion" but "[i]f the Court rules that it does not have subject matter jurisdiction, the Court will enter an order denying the [Contempt] Motion."[32]

Both parties filed briefs on the subject matter jurisdiction issue.[33] In PALIoT's supplemental brief, PALIoT made the following concession: "PALIoT does not contest that an action to enforce the terms of the [S]ale [O]rder arises in a case under title 11."[34]

On July 15, 2022, after having reviewed the supplemental briefs, the Court entered an order entitled "Order Granting Palltronics Inc.'s Motion to Enforce Sale Order and Finding of Civil Contempt Against PALIoT Solutions, Inc." (the "July 15 Order").[35] In the July 15 Order, the Court found and concluded "that it has subject matter jurisdiction to grant the relief described in this Order, below, on the [Contempt] Motion, and that the [Contempt] Motion is a core

---

[30] *Id.* at 1 ¶ 2.

[31] *Id.* at 1 ¶ 4.

[32] *Id.* at 1-2 ¶¶ 5-6.

[33] *See* Docket ## 410, 413 in Case No. 21-41019.

[34] Docket # 410 in Case No. 21-41019 at 1 (footnote omitted).

[35] Docket # 414 in Case No. 21-41019.

12

proceeding."[36]

The July 15 Order, in relevant part, awarded Palltronics "its reasonable attorneys' fees and costs related to or arising from the drafting, filing and prosecution of the [Contempt] Motion, which will include, but not be limited to, its reasonable fees and costs related to or arising from the discovery with LinkedIn;" and required PALIoT to "provide to Palltronics (a) a list of the Followers and the contact information, including, without limitation, the phone number, email address, company name, and individual name for each Follower, (b) a list of all click throughs from the Debtor's LinkedIn Page to the PALIoT Website, and (c) the phone records for the Phone Number from May 1, 2021, through the date that the Phone Number was removed from the Debtor's LinkedIn Page ("Time Period")."[37] The July 15 Order stated further that "[t]he phone records must include, without limitation, all incoming calls to the Phone Number during the Time Period: and that Palltronics will have the right to call each and every person that called the Phone Number during the Time Period to advise such caller that PALIoT incorrectly held itself out as the Debtor (or Palltronics)."[38] The July 15 Order also stated that "[t]his Order is without prejudice to Palltronics'[s] right to seek additional damages and equitable relief from PALIoT."[39]

### C. Palltronics's adversary complaint against PALIoT

In filing this adversary proceeding on June 23, 2022, Palltronics filed a six-count

---

[36] *Id.* at 2.

[37] *Id.* at ¶¶ 2-3.

[38] *Id.* at ¶ 3.

[39] *Id.* at ¶ 4.

complaint against PALIoT. The complaint alleges that PALIoT, having been unsuccessful in its efforts to buy the Debtor's Assets, stole some of the Assets that were sold to Palltronics under the Final APA and the Sale Order. Palltronics alleges that PALIoT stole the Debtor's Intellectual Property ("IP"), and the Debtor's confidential information, including proprietary information and trade secrets, in order "to set up a directly competing business to Palltronics" and to usurp any benefit Palltronics received in the bankruptcy process.[40]

The complaint's six counts contain the following titles: Count I ("Declaratory Judgment Regarding Violation of the Sale Order"); Count II ("Misappropriation of Trade Secrets (Defend Trade Secret Act, 18 U.S.C. § 1836, *et seq.*)"); Count III ("Misappropriation (MCL 445.1901)"); Count IV ("Computer Fraud and Abuse Act (18 U.S.C. § 1030)"); Count V ("Unfair Competition (common law)"); and Count VI ("Intentional Interference with Prospective Economic Advantage").

### D. PALIoT's motion to dismiss

On June 28, 2022, PALIoT filed the Motion, seeking to dismiss this adversary proceeding for lack of jurisdiction, or in the alternative, based on abstention.[41]

PALIoT's first argument is that this Court lacks subject matter jurisdiction over any of the counts in the complaint. PALIoT concedes that this Court has subject matter jurisdiction to enforce its Sale Order.[42] But PALIoT argues that none of the counts in the complaint actually

---

[40] *Id.* at ¶¶ 1, 9, 34, 52.

[41] Docket # 11.

[42] *See* Reply Br. in Supp. of PALIoT's Mot. to Dismiss for Lack of Jurisdiction, or in the Alternative, for Abstention (Docket # 18) ("PALIoT [does not] dispute that the Court has jurisdiction to enforce its orders including the [S]ale [O]rder."); Suppl. Br. Re Subject Matter Jurisdiction over

14

involve the enforcement of the Sale Order. PALIoT argues that the Court lacks subject matter

jurisdiction over Palltronic's claims because (1) they "do not 'arise under' the Bankruptcy Code;"

(2) they "do not 'arise in' a case under title 11;" and (3) they "do not 'relate to' the [Lightning

Technologies bankruptcy case]."[43]

PALIoT argues further that even if the Court has subject matter jurisdiction over any of

the counts in the complaint, the Court should abstain from hearing any of the counts.[44]

Palltronics argues that the Court has subject matter jurisdiction over all of the counts in

the complaint, because each of the counts "stem from PALIoT's past and continuing violation of

the Sale Order."[45] Palltronics argues that the Court has "at a minimum, 'related to'" jurisdiction

because its claims "'involve legal issues concerning the interpretation, validity, and enforcement

of [a] bankruptcy court's orders.'"[46] Palltronics argues further that the Court "must determine

compensatory relief for PALIoT's violation of the Sale Order, and these counts provide the legal

framework for doing so" because '[t]hey are integrally related."[47]

## III. Discussion

### A. The scope of this Court's subject matter jurisdiction

---

Palltronics's Mot. For Contempt (Docket # 410 in Case No. 21-41019) at 1 (footnote omitted) ( "PALIoT does not contest that an action to enforce the terms of the [S]ale [O]rder arises in a case under title 11.").

[43] Br. in Supp. of PALIoT's Mot. to Dismiss for Lack of Jurisdiction or in the Alternative, for Abstention (Docket # 11-3) at 4-8 (bold omitted).

[44] *Id.* at 9-13

[45] Palltronics Br. in Supp. of Obj. to Mot. to Dismiss for Lack of Jurisdiction, or in the Alternative, for Abstention (Docket # 15) at 2.

[46] *Id.*

[47] *Id.*

### 1. General principles

This Court has jurisdiction and authority to determine the scope of its subject matter jurisdiction over the counts pled in Palltronics's complaint. *See Bavelis v. Doukas* (*In re Bavelis*), 453 B.R. 832, 844 (Bankr. S.D. Ohio 2011) (citations omitted) ("Although the Court's authority to decide this adversary proceeding has been challenged, the Court has jurisdiction to determine whether it in fact has subject-matter jurisdiction."); *Etterbeek v. APTCAM, LLC* (*In re Lewiston*), 521 B.R. 811, 814 (Bankr. E.D. Mich. 2014) (citations omitted) (same); *see also Bliss Technologies, Inc. v. HMI Indus., Inc.* (*In re Bliss Technologies, Inc.*), 307 B.R. 598, 602 (Bankr. E.D. Mich. 2004) ("A bankruptcy court has the authority to determine whether a proceeding is core or non-core under 28 U.S.C. § 157(b)(3)[.]").

The Court must examine separately each of the counts in Palltronics's complaint, to determine if it has subject matter jurisdiction over each count. *See Bavelis*, 453 B.R. at 850 (citations omitted) ("The Court must ['consider whether it has jurisdiction'] with respect to each of the Bankruptcy Law Counts and each of the State Law Counts even though certain of those counts are asserted only against parties . . . that have not challenged the Court's subject-matter jurisdiction."); *see also Bliss Technologies, Inc.,* 307 B.R. at 603, 608 (citations omitted) ("[A] bankruptcy court 'must examine each cause of action separately to determine if it is core or non-core.'").

Bankruptcy courts are courts of limited jurisdiction. "[B]ankruptcy court jurisdiction 'must be confined within appropriate limits . . . .'" *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 164 (3d Cir. 2004) (footnote omitted) (citation omitted). Parties may not waive a lack of subject matter jurisdiction:

> "[F]ederal courts are courts of limited jurisdiction and have a
> continuing obligation to examine their subject matter jurisdiction
> throughout the pendency of every matter before them. Parties can
> neither waive nor consent to subject matter jurisdiction [.]"
> *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc.*,
> 930 F.2d 1132, 1137–38 (6th Cir.1991) (citation and footnote
> omitted); *see also Spierer v. Federated Dept. Stores, Inc.* (*In re
> Federated Dept. Stores, Inc.*), 328 F.3d 829, 833 (6th
> Cir.2003)("'parties may not waive ... or consent to subject matter
> jurisdiction which a federal court does not properly
> have.'")(quoting *Universal Consol. Cos. v. Bank of China*, 35 F.3d
> 243, 247 (6th Cir.1994)). Rather, "[i]f the court determines at any
> time that it lacks subject-matter jurisdiction, the court must dismiss
> the action." Fed.R.Civ.P. 12(h)(3).

*Allard v. Coenen* (*In re Trans-Indus., Inc.*), 419 B.R. 21, 28–29 (Bankr. E.D. Mich. 2009)

(footnote omitted).  Because parties cannot create subject matter jurisdiction by mere consent or

agreement between themselves, retention of jurisdiction provisions, such as the one in the Sale

Order in this case, cannot confer subject matter jurisdiction on the bankruptcy court where it is

otherwise lacking.  As this Court recently noted,

> Parties cannot create subject matter jurisdiction in this Court by
> mere agreement or consent, when otherwise there is no
> jurisdiction. *See, e.g.*, [*Binder v.*] *Price Waterhouse & Co., LLP*,
> 372 F.3d [154,] 161 [(3d Cir. 2004)] (citations omitted) ("[N]either
> the bankruptcy court nor the parties can write their own
> jurisdictional ticket.  Subject matter jurisdiction 'cannot be
> conferred by consent' of the parties.  Where a court lacks subject
> matter jurisdiction over a dispute, the parties cannot create it by
> agreement even in a plan of reorganization."); *Thickstun Bros.
> Equip. Co., Inc.,* [*v. Encompass Servs. Corp.* (*In re Thickstun Bros.
> Equip. Co., Inc.*),] 344 B.R. [515,] 521-22 [(B.A.P. 6th Cir. 2006)]
> (same).

*In re St. James Nursing & Physical Rehabilitation Ctr., Inc.*, No. 16-42333, 2022 WL 9560079,

at * 25 (Bankr. E.D. Mich., Oct. 14, 2022); *see also In re Nu-Cast Step & Supply, Inc.*, 639 B.R.

440, 449 (Bankr. E.D. Mich. 2021) (internal quotation marks and citation omitted).

Under 28 U.S.C. § 1334(b), the bankruptcy court's subject matter jurisdiction is limited to "'all cases under title 11;' and 'all civil proceedings' (1) 'arising under title 11' or (2) 'arising in' a case under title 11 or (3) 'related to' a case under title 11." *Trans-Indus., Inc.*, 419 B.R. at 26 (footnote omitted) (citations omitted).[48]  This Court has previously described these concepts:

> A "case under title 11" refers "merely to the bankruptcy petition itself, filed pursuant to 11 U.S.C. §§ 301, 302, or 303." *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc.*, 930 F.2d 1132, 1140 (6th Cir.1991). . . .
>
> "The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11, and 'arising in' proceedings are those that, by their very nature, could arise only in bankruptcy cases." *Bliss Technologies, Inc. v. HMI Indus., Inc.* (*In re Bliss Technologies, Inc.*), 307 B.R. 598, 602 (Bankr.E.D.Mich.2004) (quoting *Wolverine Radio*, 930 F.2d at 1144).  These two categories of civil proceedings are "core" proceedings within the meaning of 28 U.S.C. §§ 157(b)(1) and 157(b)(2).  *Id.*  The bankruptcy court can enter final orders and judgments in all "core" proceedings. 28 U.S.C. § 157(b)(1).
>
> Civil proceedings that fall only within the third category of the bankruptcy court's subject matter jurisdiction—its "related to" jurisdiction—are non-core.  In a non-core proceeding, unless all parties consent, a bankruptcy court cannot enter final orders and judgments, but instead must "submit proposed findings of fact and conclusions of law to the district court," and the district court must enter the final order or judgment. 28 U.S.C. §§ 157(c)(1), 157(c)(2).
>
> The Sixth Circuit has adopted the test articulated in *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir.1984), for determining "related to" jurisdiction:
>
> > "The usual articulation of the test for determining

---

[48]  Section 1334(b) states, in relevant part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).

> whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

> *Wolverine Radio*, 930 F.2d at 1142 (emphasis in original)(quoting *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir. l984) (emphasis in original)); *see also Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Connecticut* (*In re Dow Corning Corp.*), 86 F.3d 482, 489, 490 (6th Cir.1996).

*Id.* at 27–28 (footnote omitted).

### 2. The bankruptcy court's jurisdiction to enforce its own orders

As will be discussed below, Palltronics's complaint states claims that, at least in part, seek to enforce this Court's Sale Order. Numerous cases have held that bankruptcy courts have subject matter jurisdiction to interpret and enforce their own orders, including orders approving the sale of a debtor's assets.

In so holding, the cases have not always specified which prong of the jurisdictional statute applied, or have cited different prongs. *See, e.g.*, *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)) (holding, without specifying which prong(s) of § 1334(b) applied, that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders"); *Giese v. Lexington Coal Co.* (*In re HNRC Dissolution Co.*), 761 Fed. App'x 553, 560-61 (6th Cir. 2019) (holding that the bankruptcy court had at least "related to" subject matter jurisdiction over the parties' dispute

19

because "[the plaintiff's] claims would involve legal issues concerning the interpretation, validity, and enforcement of the bankruptcy court's orders" and, in that case, the outcome "could conceivably affect the debtor's rights and liabilities"); *In re Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016) (citation omitted) (holding that "[a] bankruptcy court's decision to interpret and enforce a prior sale order falls under this formulation of 'arising in' jurisdiction."); *Tenet Healthsystem Philadelphia, Inc. v. Nat'l. Union of Hosp. and Health Care Emps., AFSCME, AFL-CIO, Dist. 1199C (In re Allegheny Health, Educ. and Rsch. Found.)*, 383 F.3d 169, 176 (3d Cir. 2004) (holding, without specifying any prong of § 1334(b), that the adversary proceeding was a core proceeding over which the bankruptcy court had subject matter jurisdiction, "because it required the [bankruptcy] court to interpret and give effect to its previous sale orders" and that a "motion to enforce [a] bankruptcy sale order is a core proceeding[;]" but citing *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991), which held that such a proceeding is a core proceeding because it fits under one or both of the standards for "arising in" and "arising under" jurisdiction);[49] *In re Nu-Cast Step & Supply, Inc.*, 639 B.R. 440, 440, 448 (Bankr. E.D. Mich. 2021) (holding that the court had "arising in" jurisdiction to interpret and enforce the court's "stipulated order granting the [d]ebtor's motion to sell substantially all of its assets").

This Court has previously held, in two bench opinions, that bankruptcy courts have subject matter jurisdiction to interpret and enforce their own sale orders. *See* Tr. of September

---

[49] In *Marcus Hook*, the court held that such a proceeding was core, in part, because "it invokes a substantive right provided by title 11 or . . . it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." 943 F.2d at 267. In essence, these are the standards for "arising under" and "arising in" jurisdiction, respectively, under § 1334(b). *See Trans-Indus., Inc.*, 419 B.R. at 27-28, quoted above.

19, 2012 Bench Op. in *M-Heat Inves., LLC v. Jost* (*In re Micro-Heat, Inc.*), Adv. No. 12-4868

(Docket # 30) at 21-28 (finding that the Court had subject matter jurisdiction under 28 U.S.C.

§ 1334(b)'s "arising under title 11" clause and under 28 U.S.C. § 157(b)(2)(N) to interpret and

enforce two sale orders that the Court entered in the bankruptcy case); Tr. of July 27, 2016 Bench

Op. in *Telesource Servs., Inc. v. SoTel Sys., LLC* (*In re Telesource Servs., Inc.*), Adv. No. 16-

4356 (Docket # 36) at 18-26 (finding that the Court had subject matter jurisdiction under 28

U.S.C. § 1334(b), under both the "arising under title 11" clause and the "arising in . . . cases

under title 11" clause to interpret and enforce a sale order the Court entered in the bankruptcy

case).

The Court also notes that, as stated in Part II.B.2 of this Opinion, above, in deciding the

Contempt Motion in the main bankruptcy case, the Court entered an order determining that it had

subject matter jurisdiction to enforce the Sale Order against PALIoT.

The Court concludes that when it is called upon to enforce its own orders, including a

sale order, there is, at least, "arising in" jurisdiction under § 1334(b).  On this point, the Court

finds persuasive the holding and reasoning in the Second Circuit Court of Appeals case cited

above, *In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016).  That case found "arising in"

jurisdiction under § 1334(b):

> "[T]he meaning of the statutory language 'arising in' may not be
> entirely clear."  At a minimum, a bankruptcy court's "arising in"
> jurisdiction includes claims that "are not based on any right
> expressly created by [T]itle 11, but nevertheless, would have no
> existence outside of the bankruptcy."
>
> A bankruptcy court's decision to interpret and enforce a prior sale
> order falls under this formulation of 'arising in' jurisdiction.  An
> order consummating a debtor's sale of property would not exist but

> for the [Bankruptcy] Code, *see* 11 U.S.C. § 363(b), and the Code
> charges the bankruptcy court with carrying out its orders, *see id.*
> § 105(a) (providing that bankruptcy court 'may issue any order,
> process, or judgment that is necessary or appropriate to carry out
> the provisions of this title').  Hence, a bankruptcy court "plainly
> ha[s] jurisdiction to interpret and enforce its own prior orders."

829 F.3d at 153 (citations omitted).

The Court will consider each count of Palltronics's complaint to determine if the Court

has subject matter jurisdiction.

### B. Count I - "Declaratory Judgment Regarding Violation of the Sale Order"

In Count I of Palltronics's complaint, Palltronics seeks entry of "a declaratory judgment

that PALIoT's retention and use of [the] Debtor's Assets, including the Lightning Trade Secrets,

constitutes a violation of the Sale Order, and further violates Palltronics's exclusive rights

regarding the Assets purchased under the Sale Order."[50]  Palltronics argues that "[e]nforcement

of the Sale Order and its associated [Final] APA is "essential in providing the requested value to

Palltronics that it sought to purchase under the Sale Order."[51]  This count asks this Court to

interpret and enforce its Sale Order, so the Court clearly has subject matter jurisdiction over

Count I.

The Court also notes that, as stated in Part II.B.2 of this Opinion, above, in deciding the

Contempt Motion in the main bankruptcy case, the Court entered orders (1) determining that it

had subject matter jurisdiction to enforce the Sale Order, (2) holding that PALIoT violated the

Sale Order by taking the actions it took with regard to the Debtor's LinkedIn Page; and (3)

---

[50]  Compl. at ¶ 57.

[51]  *Id.* at ¶ 56.

awarding Palltronics some of the monetary and injunctive relief it sought based on PALIoT's actions regarding the Debtor's LinkedIn Page.

### C. Count II - "Misappropriation of Trade Secrets (Defend Trade Secret Act, 18 U.S.C. § 1836, et seq.)"

Count II of Palltronics's complaint is a claim under a non-bankruptcy federal statute – the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq. This Act provides a private right to bring a civil action to the owner of trade secrets that have been misappropriated. Section 1836(b)(1) of this Act states, in relevant part, that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

The Court concludes that it has subject matter jurisdiction over this claim.

Initially, the Court concludes that this is not a claim either (1) "arising under title 11;" or (2) "related to" a case under title 11, so that this Court does not have jurisdiction based on either of these two prongs of 11 U.S.C. § 1334(b).

This claim is not a claim "arising under title 11" because it does not "involve a cause of action created or determined by a statutory provision of title 11." *See Bliss Technologies, Inc.,* 307 B.R. at 602 (quoting *Wolverine Radio*, 930 F.2d at 1144). Rather, this claim is created and determined by a non-bankruptcy federal statute.

Nor is this claim that is "related to" a case under title 11, because the outcome of any determination of the claim "could [not] conceivably have any effect on the" Debtor's bankruptcy estate, nor could it "alter the [D]ebtor's rights, liabilities, options, or freedom of action (either

23

positively or negatively)," nor could it "in any way impact[] upon the handling and administration of the [Debtor's bankruptcy] estate." *See Pacor*, 743 F.2d at 994. This is a dispute between two non-debtor parties, and any determination of the misappropriation of trade secrets claim will only impact the rights of the two non-debtor parties. For example, if monetary relief (*e.g.*, attorney fees or compensatory damages) is awarded to Palltronics and against PALIoT for misappropriation of trade secrets, that relief will benefit only Palltronics, and not the Lightning Technologies bankruptcy estate.

The Court concludes that it ***does*** have jurisdiction over this claim on the § 1334(b) ground that it is a claim "arising in" a case under title 11.

As discussed above, in order to be a claim "arising in" a case under title 11, the claim must be one which, "'by [its] very nature, could arise only in bankruptcy cases,'" *see Bliss Technologies, Inc.,* 307 B.R. at 602 (quoting *Wolverine Radio*, 930 F.2d at 1144).

At first blush, it is arguable that this claim does not meet this requirement. This *type* of claim — misappropriation of trade secrets — is one over which federal *non-bankruptcy* courts have subject matter jurisdiction. Similarly, this *type* of claim often arises outside of, and independently of, any bankruptcy case. Here it involves a dispute between two non-debtor parties, and it is a *type* of dispute that routinely arises outside of bankruptcy.

Palltronics has not identified any specific provision of the Sale Order that the Court must *interpret* to decide this claim. Rather, the determination of this claim does not require the Court to resolve any dispute between the parties over the interpretation of any specific provision of the Sale Order. "PaLIoT does not dispute that Palltronics purchased [the Debtor's IP] through the

24

[Final APA],” which includes the Debtor’s trade secrets.[52]

In order to decide this claim, it is necessary for a court to determine whether PALIoT has “misappropriated” Palltronics’s trade secrets; whether those trade secrets are “related to a product or service used in, or intended for use in, interstate or foreign commerce;” and if PALIoT violated the statute, what monetary and injunctive relief is appropriate.  In this case, these elements do not appear to involve any dispute over the *interpretation* of the Sale Order.

But indirectly, at least, this claim does seek to *enforce* the Sale Order.  That is because Palltronics is only able to bring this federal statutory claim of  misappropriation of trade secrets because it owns the trade secrets at issue.  And Palltronics only owns those trade secrets because of this Court’s Sale Order and the related Final APA.  And the Sale Order did not merely authorize the Trustee to close a sale of the Assets to Palltronics under the terms of the Final APA.  Rather, as quoted in Part II.B.1 of this Opinion, the Sale Order itself actually ordered that upon closing, “all right, title, and interest” in the Assets would “vest” in Palltronics, “free and clear of an from any and all Interests . . .,” and that “all persons or entities which, as of or after the Closing Date, are in possession of some or all of the Assets are ordered and directed to surrender possession of the Assets to” Palltronics, “on the Closing Date or at such time thereafter as [Palltronics] may request . . . .”[53]

In this indirect sense, at least, granting any relief to Palltronics on this Count II claim necessarily would be *enforcing* the Sale Order.  Palltronics’s ownership of the trade secrets, and

---

[52]  Br. in Supp. of PALIoT's Mot. to Dismiss for Lack of Jurisdiction or in the Alternative, for Abstention (Docket # 11-3) at 8.

[53]  *See* Sale Order at 23 ¶ 6, 25-26 ¶ 9.

this claim, "would not exist but for the [Bankruptcy] Code, *see* 11 U.S.C. § 363(b)," the Lightning Technologies bankruptcy case, and the sale order entered in that case. *See In re Motors Liquidation Co.*, 829 F.3d at 153, quoted in Part III.A.2 of this Opinion. As a result, the Court concludes that this claim is one "arising in" a case under title 11, and the Court has subject matter jurisdiction over this claim.

The Court acknowledges that this jurisdictional holding is not free from doubt.[54] And as the United States Court of Appeals for the Second Circuit observed in a recent case:

> Given that "the meaning of the statutory language 'arising in'" is less than
> "clear," *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010); *accord, e.g.*,
> *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) (observing same), and that the
> Supreme Court has provided scant guidance in what is typically a highly
> fact-specific inquiry, this jurisdictional question turns out to be a rather
> difficult one.

*Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP* (*In re Tronox, Inc.*), No. 20-3949-bk, 2022 WL 16753119, at * 1 (2d Cir. Nov. 8, 2022).

Even though the Court concludes that it has "arising in" jurisdiction, under § 1334(b) such jurisdiction is "original but not exclusive," and this Court has discretion to abstain from hearing this claim, "in the interests of justice," under 11 U.S.C. § 1334(c)(1). Such permissive abstention is discussed in Part III.H, below.

### D. Count III - "Misappropriation [of Trade Secrets] ([Mich. Comp. Laws §] 445.1901)"

Count III of Palltronics's complaint is a cause of action under Michigan's Uniform Trade

---

[54] For example, one might argue that this Court's jurisdictional holding is inconsistent with the case of *Gupta v. Quincy Medical Center*, 858 F.3d 657, 664-66 (1st Cir. 2017) (rejecting a "but for" type test for "arising in" jurisdiction). *Gupta* is distinguishable from this case, given the language of the Sale Order in this case, quoted above. But even if and to the extent *Gupta* conflicts with the Court's reasoning or ruling in this case, the Court respectfully disagrees with *Gupta*.

Secret Act, Mich. Comp. Laws §§ 445.1901- 445.1910, for PALIoT's alleged misappropriation

of the trade secrets sold to Palltronics under the Sale Order.  This Act provides for injunctive and

other relief if a misappropriation of trade secrets is found.  Mich. Comp. Laws §§ 445.1903(1)

and 445.1903(3) state, in relevant part, that the "[a]ctual or threatened misappropriation [of trade

secrets] may be enjoined" and that "[i]n appropriate circumstance, affirmative acts to protect a

trade secret may be compelled by court order."  The Act also provides for the recovery of

damages, with certain exceptions, if a misappropriation of trade secrets is found. Mich. Comp.

Laws § 445.1905 states:

> Sec. 4. Except to the extent that a material and prejudicial change of
> position prior to acquiring knowledge or reason to know of
> misappropriation renders a monetary recovery inequitable, a complainant
> is entitled to recover damages for misappropriation. Damages can include
> both the actual loss caused by misappropriation and the unjust enrichment
> caused by misappropriation that is not taken into account in computing
> actual loss. In lieu of damages measured by any other methods, the
> damages caused by misappropriation may be measured by imposition of
> liability for a reasonable royalty for a misappropriator's unauthorized
> disclosure or use of a trade secret.

Palltronics apparently is seeking both an injunction and compensatory damages under this

count.[55]

The Court concludes that it has "arising in" subject matter jurisdiction over this claim.

This conclusion is based on the same reasoning the Court stated above, regarding Count II of the

complaint.

As with Count II, however, this Court's jurisdiction is "original but not exclusive" under

§ 1334(b).  And as discussed in Part III.H below, this Court has discretion to abstain from

---

[55] *See* Compl. at ¶ 74.

hearing this claim under § 1334(c)(1), "in the interests of justice, or in the interest of comity with State courts or respect for State law" under 11 U.S.C. § 1334(c)(1).

### E. Count IV - "Computer Fraud and Abuse Act (18 U.S.C. § 1030)"

Count IV of Palltronics's complaint is a cause of action brought under another non-bankruptcy federal statute — the Computer Fraud and Abuse Act (18 U.S.C. § 1030) (the "CFAA"). 18 U.S.C. § 1030(g) "enables a party to bring a private cause of action for any violation under the CFAA. *Theofel v. Farey–Jones*, 359 F.3d 1066, 1078 n.5 (9th Cir.2004)." *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 964 (D. Ariz. 2008).[56]

> "To make out a claim under the CFAA, [a plaintiff] must prove that [a defendant] has (1) intentionally accessed (2) a protected computer (3) without authorization, and (4) as a result of such conduct, has (5) intentionally, recklessly or otherwise caused (6) damage." *FERCO Enters., Inc. v. Taylor Recycling Facility LLC*, No. 1:05-CV-2980-ODE, 2007 WL 9701361, at *30 (N.D. Ga. Oct. 16, 2007), *aff'd*, 291 F. App'x 304 (11th Cir. 2008).

*Bowen v. Porsche Cars, N.A., Inc.*, 561 F. Supp. 3d 1362, 1368 (N.D. Ga. 2021).

Palltronics bases its CFAA claim on the following allegations:

---

[56] Section 1030(g) states:

> (g) Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

18 U.S.C. § 1030 (footnote omitted).

76. PALIoT, and/or representatives of PALIoT, accessed a protected computer belonging to Palltronics and exceeded its authorization . . . to modify the [Debtor's] LinkedIn Page or to access other assets of Debtor, which Palltronics owned pursuant to the Order of Sale.

77. As a result of PALIoT's actions, Palltronics faces immediate irreparable harm in the diversion of business opportunities as a result of PALIoT's unlawful changes. This loss is not adequately compensable by money damages.

78. In addition, PALIoT knowingly and with the intent to defraud Palltronics accessed a protected computer, exceeding its authority, and by means of such conduct furthered the intended fraud and obtained valuable information, namely Debtor's LinkedIn passwords and information. Such information is valued above $5,000.

79. Moreover, Palltronics has incurred costs above $5,000 in its attempt to investigate who made the changes to the [Debtor's] LinkedIn page. Such investigations ultimately confirmed these changes were made by PALIoT's Co-Founder, Chief Technology Officer, and Chief Sustainability Officer—Richard MacDonald.

80. PALIoT violated 18 U.S.C. §§ 1030(a)(5)(B) and 1030(a)(5)(C), because they intentionally, and with disregard for the law and the rights of Palltronics, accessed Palltronics or Debtor's protected computers without authorization and caused resultant (a) damage, such damage including the unavailability to public viewers of the [Debtor's] LinkedIn Page of a button leading to the correct web address and the impairment of the integrity and availability of information about Debtor that are available on its LinkedIn profile, and (b) loss, including, without limitation, the reasonable cost to Palltronics incurred in investigating and responding to the unlawful action, including at least $5,000 in reasonable attorney fees, expenses, and lost time.

81. Further, Palltronics' inability to accurately communicate through the [Debtor's] LinkedIn Page, as well as the confusion created by, and potential lost business opportunities attributable to, the button directing internet users PALIoT's website damages Debtor's and/or Palltronics' reputation and goodwill, such loss equaling at least $5,000.

82. As a result of PALIoT's unlawful actions, Palltronics has been injured and faces irreparable injury. In addition to actual compensatory damages, attorney fees, and costs, Palltronics is threatened with losses, which may be impossible to determine, unless PALIoT is enjoined and restrained by order of this Court.

PALIoT's misconduct with respect to the LinkedIn page, alleged to be a CFFA violation in Count IV, also was the subject of Palltronics's Contempt Motion, discussed in Part II.B.2 of this Opinion, above. As noted above, the Court held that it had subject matter jurisdiction over the Contempt Motion. In order to grant Palltronics the relief requested in the Contempt Motion based on civil contempt, the Court had to find, and did find, (1) that PALIoT knew of the Sale Order, which was definite and specific; (2) that PALIoT violated paragraph 9 of the Sale Order, which in relevant part, required "all persons or entities which, as of or after the Closing Date, are in possession of some or all of the Assets are hereby ordered and directed to surrender possession of the Assets to [Palltronics] on the Closing Date or at such time thereafter as [Palltronics] may request,"[57] (3) that "there [was] no fair ground of doubt as to whether the [Sale O]rder barred [PALIoT's] conduct, or "in other words . . . [that] there [was] no objectively reasonable basis for concluding that [PALIoT's] conduct might be lawful," *see Taggart v. Lorenzen,* 139 S. Ct. 1795, 1799 (2019); and (4) that PALIoT had the ability to comply with the Sale Order. *See Taggart v. Lorenzen,* 139 S. Ct. 1795, 1799 (2019); *In re City of Detroit, Michigan*, 614 B.R. 255, 265–66 (Bankr. E.D. Mich. 2020). The Contempt Motion required the Court to interpret a particular provision of the Sale Order (paragraph 9) to determine if PALIoT had violated it, and to enforce that provision if the Court found that PALIoT was violating it.

By contrast, Count IV of the complaint, based on the CFAA, does not require the Court to

---

[57] Sale Order (Docket # 244 in Case No. 21-41019) at 25-26 ¶ 9.

resolve a dispute over the interpretation of any provision of the Sale Order. Nor does it require a court to apply any provision of the Bankruptcy Code. The CFAA claim is based entirely on nonbankruptcy law. This is a claim over which nonbankruptcy courts have jurisdiction, and this *type* of claim often arises outside of, and inedpendently of, any bankruptcy case. And any relief awarded as a result of this claim, whether it be injunctive relief, compensatory damages, or any other equitable relief, will not have any impact whatsoever on the Debtor's bankruptcy case or the estate or on the rights of Debtor.

Nonetheless, the Court concludes that it has "arising in" subject matter jurisdiction over this claim. This conclusion is based on the same reasoning the Court stated above, regarding Counts II and III of the complaint. Indirectly, at least, Count IV seeks to enforce the Sale Order, because Palltronics would not own the LinkedIn page, or the protected computer(s) at issue, or the other assets at issue, except for the Bankruptc] Code, *see* 11 U.S.C. § 363(b), the Lightning Technologies bankruptcy case, and the sale order entered in that case.

This is sufficient to give this Court "arising in" jurisdiction over Count IV.

As with Counts II and III, this Court's jurisdiction is "original but not exclusive" under § 1334(b). And as discussed in Part III.H below, this Court has discretion to abstain from hearing this claim under § 1334(c)(1), "in the interests of justice."

### F. Count V - "Unfair Competition (common law)"

Count V of the complaint is a claim of unfair competition under Michigan common law. Count V is based on PALIoT's actions with regard to the Debtor's LinkedIn Page, described in Count IV, and PALIoT's alleged misappropriation of Palltronics's trade secrets. Under Michigan common law,

31

> "[i]n order to make out a case of unfair competition, it is not necessary to show that any person has been actually deceived by defendant's conduct and led to purchase his goods in the belief that they are the goods of plaintiff or to deal with defendant thinking he was dealing with plaintiff. It is sufficient to show that such deception will be the natural and probable result of defendant's acts. But either actual or probable deception and confusion must be shown, for if there is no probability of deception, there is no unfair competition."

*Burns v. Schotz*, 72 N.W.2d 149, 151 (Mich. 1955) (citation omitted).

The Court concludes that it has subject matter jurisdiction over this claim. This claim is one "arising in" a case under title 11, for the same reasons that Counts II, III, and IV are such claims.

As with Counts II, III, and IV, however, this Court's jurisdiction is "original but not exclusive" under § 1334(b). And as discussed in Part III.H below, this Court has discretion to abstain from hearing this claim under § 1334(c)(1), "in the interests of justice, or in the interest of comity with State courts or respect for State law" under 11 U.S.C. § 1334(c)(1).

### G. Count VI - " Intentional Interference with Prospective Economic Advantage"

Count VI of the complaint seeks compensatory and injunctive relief under Michigan's common law for the tort of "intentional interference with prospective economic advantage." "[A] claim of tortious interference with a contract or a prospective economic advantage is complete upon a showing of the existence of a valid business relationship or the expectation of such a relationship between the plaintiff and some third party, knowledge of the relationship or expectation of the relationship by the defendant, and an intentional interference causing termination of the relationship or expectation, resulting in damages to the plaintiff." *Blazer Foods, Inc. v. Rest. Properties, Inc.*, 673 N.W.2d 805, 813 (Mich. Ct. App. 2003).

For the same reasons explained regarding Count V, above, the Court concludes that it has subject matter jurisdiction over Count VI of the Complaint. As with Count V, this Court's jurisdiction is "original but not exclusive" under § 1334(b). And as discussed in Part III.H below, this Court has discretion to abstain from hearing this claim under § 1334(c)(1), "in the interests of justice, or in the interest of comity with State courts or respect for State law" under 11 U.S.C. § 1334(c)(1).

**H. Permissive abstention under 28 U.S.C. 1334(c)**

Because the Court has subject matter jurisdiction over all of the counts in Palltronics's complaint, the Court must decide PALIoT's alternative request for relief — namely, whether the Court should exercise its discretion under 28 U.S.C. § 1334(c)(1) to abstain from hearing and deciding those counts.

28 U.S.C. § 1334(c) applies to abstention. It has two parts: permissive abstention under § 1334(c)(1) and mandatory abstention under § 1334(c)(2). The Court considers PALIoT's abstention request only under § 1334(c)(1), but the language of § 1334(c)(2) is relevant to one of Palltronics's arguments. Section 1334(c) states:

> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely

33

adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c).  As is clear from its wording, § 1334(c)(1) permits this Court to abstain

from hearing a proceeding over which the Court has subject matter jurisdiction, based on any one

or more of the following grounds: (1) "in the interest of justice;" or (2) "in the interest of comity

with State courts;" or (3) "in the interest of . . . respect for State law."

Palltronics argues that the Court may not abstain from hearing any of the counts because

they are core proceedings and "there is no parallel state court proceeding to decide the claims if

this Court were to abstain."[58]  Palltronics relies on *Sec. Farms v. Int'l Bhd. of Teamsters,*

*Chauffers, Warehousemen & Helpers*, 124 F.3d 999 (9th Cir. 1997) to support its position.  In

that case, the court stated: "Abstention can exist only where there is a parallel proceeding in state

court.  That is, inherent in the concept of abstention is the presence of a pendent state action in

favor of which the federal court must, or may, abstain."  *Id.* at 1099 (citations omitted).

Palltronics argues further that "[e]ven if the Court is considering abstaining from some or all of

the [c]ounts, the factors [the Court must apply to making that decision] favor hearing the matter,

not abstaining from it."[59]

PALIoT argues that there need not be any parallel proceeding now pending in state court

in order for the Court to abstain.  PALIoT argues that any such requirement is

> not based on the text of § 1334, which allows the Court to abstain
> for any reason in "the interest of justice[,]" [n]or is it the law of
> this Circuit or in this Court.  Rather, the existence of a state court
> proceeding is merely a factor for the [C]ourt to consider when

---

[58]  Palltronics Br. in Supp. of Obj. to Mot. to Dismiss for Lack of Jurisdiction, or in the
Alternative, for Abstention (Docket # 15) at 13, 15.

[59]  *Id.* at 16-19.

deciding to abstain.[60]

PALIoT argues further that the factors that courts consider in deciding whether to abstain from hearing a particular proceeding over which they have subject matter jurisdiction all support abstention.[61]

The Court agrees with both of PALIoT's arguments.

First, the requirement that there be a pending state court action in order for a court to abstain is express and clear from the language of § 1334(c)(2). That mandatory abstention provision, quoted above, cannot be invoked unless "an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). But there is no such language in § 1334(c)(1), which governs permissive abstention.

Based on the text of § 1334(c), the Court concludes that there is no requirement that a parallel state court proceeding now be pending, in order for the Court to permissively abstain under § 1334(c)(1). Rather, the existence of a pending state court proceeding that could adjudicate the claims is just one of many factors a bankruptcy court may consider in determining whether abstention is, in the words of § 1334(c)(1), "in the interest of justice, or in the interest of comity with State courts or respect for State law." *See, e.g., In re Nu-Cast Step & Supply, Inc.,* 639 B.R. at 451 (listing "[t]he presence of a related proceeding commenced in state court or other non-bankruptcy court" as one of thirteen factors a bankruptcy court may consider in deciding whether to permissively abstain from hearing a matter).

---

[60] Reply Br. in Supp. of PALIoT's Mot. to Dismiss for Lack of Jurisdiction, or in the Alternative, for Abstention (Docket # 18) at 5 (citation omitted).

[61] *Id.* at 5-7.

Second, the Court agrees with PALIoT that abstention is favored under the circumstances of this case, and upon a consideration of the non-exclusive list of abstention factors that courts normally consider. The factors are described in the case of *Brothers v. Tremaine* (*In re Tremaine*), 188 B.R. 380, 384–85 (Bankr. S.D. Ohio 1995) (footnote omitted) (citations omitted):

> The decision whether to abstain [under § 1334(c)(1)] is within the sound discretion of the bankruptcy judge. Permissive abstention is not limited to non-core matters, but is applicable in core proceedings . . . . and can be raised by a bankruptcy court on its own motion so long as the parties are given an opportunity to be heard.
>
> "[A]bstention from the exercise of federal jurisdiction is the exception, not the rule."
>
> The decision to abstain or not is aided by an analysis of all relevant factors, including a non-exclusive list of thirteen (13) decisional criteria set forth by this court in *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co.* (*In re Nationwide Roofing & Sheet Metal, Inc.*), 130 B.R. 768 (Bankr.S.D.Ohio 1991). Specifically, the following factors were identified: 1) the effect or lack of effect on the efficient administration of the estate if a court abstains; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the difficulty or unsettled nature of the applicable state law; 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7) the substance rather than form of an asserted "core" proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of this court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11) the existence of a right to a jury trial; 12) the presence in the proceeding of nondebtor parties; and, 13) any unusual or other significant factors. *Nationwide*, 130 B.R. at 780 (citations omitted).

This non-exclusive list does not require a mechanical application of each factor, but provides a starting point for a permissive abstention analysis.

*See also In re Nu-Cast Step & Supply, Inc.,* 639 B.R. at 451 (same); *Bavelis v. Doukas* (*In re Bavelis*), 453 B.R. at 881-82 (same); *Andrus v. Ajemian* (*In re Andrus*), 338 B.R. 746, 750-51 (Bankr. E.D. Mich. 2006) (same); *Kmart Creditor Trust v. Conaway* (*In re Kmart Corp.*), 307 B.R. 586, 596-97 (Bankr. E.D. Mich. 2004) (same).

The Court has considered all of the relevant circumstances and factors, and finds that they weigh in favor of the Court exercising its discretion to abstain. The Court will abstain, for the following reasons.

- This adversary proceeding is between two non-debtor parties.

- If this Court abstains in this adversary proceeding, there will be no effect on the administration of the bankruptcy estate in the Lightning Technologies bankruptcy case.

- The issues involved in this adversary proceeding are remote from the main bankruptcy case. And one of the purposes and desired results of the Chapter 7 Trustee selling assets of the bankruptcy estate is to liquidate those assets and thereby remove them from further involvement in the bankruptcy case.

- Admittedly, this Court has determined that it has subject matter jurisdiction over all six counts in Palltronics's complaint. But as discussed above, that determination rests on a jurisdictional theory that is not free from doubt, at least with respect to five of those six counts (Counts II through VI). If this Court were to retain and decide those counts, and an appellate court later disagreed with this Court's jurisdictional theory, and held that this Court lacked subject matter jurisdiction, then the appellate court would have to vacate any judgment entered by this Court on those counts, and require dismissal of them. In that event, all of this Court's work on the merits of the claims, and the time and effort it took for the parties to obtain this Court's decision on the merits, could turn out to have been wasted. The parties would have to start over in litigating the claims in those counts. If this Court abstains, the possibility of this type of enormous waste occurring is removed.

- If Palltronics files a case in a state or federal nonbankruptcy court, all of the counts in

the complaint could be decided by that court, without any doubts about jurisdiction. A federal non-bankruptcy court would have federal question jurisdiction over the claims based on the federal statutes, under 28 U.S.C. § 1331, and would have pendent jurisdiction over the state law claims. *See generally United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (discussing pendent jurisdiction); *see also* 28 U.S.C. § 1367(a) (regarding district courts' supplemental jurisdiction).[62] A Michigan state court would have jurisdiction over the state law claims, and also would have jurisdiction to decide the federal statutory claims, because federal court jurisdiction over those claims is not exclusive. *See, e.g.*, 18 U.S.C. § 1836(c) (Defend Trade Secret Act; federal district court jurisdiction stated to be "original," but not stated to be "exclusive"); *In re Ogilvie*, 533 B.R. 460, 467–68 (Bankr. M.D. Pa. 2015).[63]

- State law and nonbankruptcy federal law, rather than bankruptcy law, will determine the merits of at least five of the six counts in the Palltronics complaint (Counts II through VI).

- The only count of the complaint not governed entirely by state law or nonbankruptcy federal law, Count I, involves little or no application of bankruptcy law. There appears to be no dispute about what Assets were sold to Palltronics in the bankruptcy sale under the Sale Order. Rather, the disputes concern the extent to which PALIoT has used or is using those Assets, and the extent to which the Assets are trade secrets or otherwise are protected by state or federal intellectual property law. Even as to Count I, in substance, this is basically just a misappropriation of trade secrets case and an unfair competition case.

---

[62]  Section 1367(a) provides district courts with "supplemental jurisdiction" and states, in relevant part: "[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.*  But as this Court has previously held, bankruptcy courts do not have such supplemental jurisdiction. *See Miller v. Bruemmer* (*In re Bruemmer Development, LLC*), 515 B.R. 551, 558-62 (Bankr. E.D. Mich. 2014).

[63]  The Court in *Ogilvie* stated:

> Unless a federal statute grants exclusive jurisdiction to federal courts, state courts have concurrent jurisdiction to hear the claims under the federal statute. *Mims v. Arrow Financial Services, LLC*, – U.S. –, 132 S.Ct. 740, 750, 181 L.Ed.2d 881 (2012) (construing the Telephone Consumer Privacy Act, 47 U.S.C. § 227); *Itri v. Equibank, N.A.*, 318 Pa.Super. 268, 464 A.2d 1336, 1343 (1983) (claims under the FDCPA are not restricted to federal forums).

38

- The burden on the bankruptcy court docket would be significant if the Court were to hear and determine the Palltronics claims in this adversary proceeding. And as noted above, this burden would require the bankruptcy court to expend its resources to decide a dispute between two non-debtors that will have no impact on the administration of the Lightning Technologies bankruptcy estate.

- The bankruptcy court does not have any particular expertise in the specialized areas of law involved in this case, compared with the federal and state nonbankruptcy courts where such areas of law are more routinely applied.

- The issues in this case appear to involve extensive factual and legal disputes about whether and to what extent Palltronics's purported trade secrets and intellectual property at issue are protected as such under applicable nonbankruptcy law, and what damages and injunctive relief should be awarded for any violations of Palltronics's rights. These are not bankruptcy-related issues.

- Palltronics is plainly incorrect when it argues that abstention by this Court "would mean allowing the theft of assets from a bankruptcy sale to go unchecked and call into question the validity and enforceability of future sales under section 363 of the Bankruptcy Code."[64] Abstention merely will mean that Palltronics must bring its claims and seek to enforce its rights in a different court — *i.e.*, a state court or a federal nonbankruptcy court, rather than in this bankruptcy court.

## IV. Conclusion

For the reasons stated in this Opinion, the Court will enter an order denying the Motion to the extent it seeks dismissal for lack of subject matter jurisdiction; but granting the Motion to the extent it seeks permissive abstention. The Court will order that this Court abstains from hearing and determining all the counts (Counts I through VI) of Palltronics's complaint; and will dismiss Counts I through VI on permissive abstention grounds.

---

[64] Palltronics Br. in Supp. of Obj. to Mot. to Dismiss for Lack of Jurisdiction, or in the Alternative, for Abstention (Docket # 15) at 14.

Signed on November 21, 2022  /s/ Thomas J. Tucker
_____
Thomas J. Tucker
United States Bankruptcy Judge